**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1029
_____

THE ESTATE OF MICHAEL TRISTIAN PAONE, DECEASED, BY AND
THROUGH THE ADMINISTRATORS OF THE ESTATE, MICHAEL PAONE, JR.
AND LISA PAONE; LISA PAONE; JULIANA PAONE,
Appellants

v.

TOWNSHIP OF PLYMOUTH; PLYMOUTH TOWNSHIP POLICE OFFICERS
DOES 1-10, INCLUSIVE; KYLE LOWERY; GERALD DESANTIS
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:22-cv-02178)
District Judge: Honorable Joshua D. Wolson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on December 1, 2025

Before: CHAGARES, *Chief Judge,* FREEMAN and MASCOTT, *Circuit Judges*

(Opinion filed: March 9, 2026)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

FREEMAN, *Circuit Judge*.

In 2021, police officers used deadly force against Michael Paone ("Paone"), who brandished a pellet gun during a mental health crisis. Paone's death was tragic. Nonetheless, the District Court correctly granted summary judgment for the defendants. We will affirm.

**I**

On the night of August 3, 2021, Juliana Paone ("Juliana") called 911 in Montgomery County, Pennsylvania, and said she feared for her life. She reported that her brother, Paone, had a knife, had "jumped" her, and was trying to stab their mother. App. 92. She added that Paone's mental health problems had "gotten very bad." App. 92. When the dispatcher asked whether Paone had other weapons, Juliana responded that he had "[n]o guns," but he had "fake toy guns" on him. App. 93.

Police Officers Kyle Lowery and Gerard DeSantis heard a radio report that an armed suspect was trying to stab his mother. The officers separately responded to the scene. While they were en route, another radio report announced that the suspect had stabbed his mother and had a history of mental illness. Additionally, Lowery learned from a screen in his patrol car that the suspect had "fake toy guns on him." App. 1924.[1]

Lowery parked his patrol car near the Paones' building around 11:15 p.m. As he jogged toward the building, a passerby ran in the opposite direction and Lowery yelled to

---

[1] Lowery denies having seen the report about the fake toy guns, but we recount the facts in the light most favorable to the party opposing summary judgment. *See Turco v. City of Englewood*, 935 F.3d 155, 161 (3d Cir. 2019)

2

that person, "Huh? He's got a gun?" App. 105 at 3:15:32–3:15:35.[2] Lowery then drew his gun and pointed it and his flashlight ahead of him as he proceeded toward the Paones' building. *Id.* at 3:15:35–3:15:53. Meanwhile, DeSantis arrived at the scene. Both officers saw Paone's mother, Lisa Paone ("Lisa"), who was covered in blood outside the building.

The officers then saw Paone. He was holding a pellet gun while standing in a grassy area outside of the building. The pellet gun looked like this when it was recovered from the scene after the incident:



App. 1024. This is how it looked after being cleaned for a forensic examination:

---

[2] The audio and video recording from Lowery's body-worn camera is at App. 105. DeSantis's body-worn camera was not activated during these events.



App. 1016.

The officers proceeded toward Paone from different directions, with DeSantis to Lowery's left. Both officers yelled out, "Drop the gun." App. 105 at 3:15:52–3:16:05; Additionally, Lisa said, "I'm dying," and Paone said, "Kill me." *Id.* at 3:15:59–3:16:03.

Paone dropped the pellet gun, and the officers yelled, "Step away from the gun." *Id.* at 3:16:05–3:16:13. Instead of stepping away, Paone picked up the pellet gun and pointed it in a direction to Lowery's left. Lowery then fired his weapon. Paone fell to the ground but quickly sat up and raised the pellet gun again. The officers then both fired at Paone, with Paone continuing to re-raise the gun between the shots being fired at him.

Twenty seconds passed between Lowery's first shot and the officers' last shot. When the shooting stopped, Paone remained on the ground. He later died of gunshot injuries.

Paone's estate, Lisa, and Juliana (collectively, "the family") sued Lowery, DeSantis, and the township the officers work for. As relevant here, the family claimed

4

the officers used excessive force against Paone.[3]  The District Court granted summary judgment for the officers on the basis of qualified immunity.  The family timely appealed.

## II[4]

"Qualified immunity shields federal and state officials from money damages unless a plaintiff [demonstrates] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  We have discretion to decide which of these prongs to address first.  *Id.*  Here, the officers are entitled to qualified immunity because the facts do not support that they violated a constitutional right.

"A police officer's use of deadly force violates the Fourth Amendment when it is not 'objectively reasonable.'"  *Barnes v. Felix*, 605 U.S. 73, 76 (2025).  Although the reasonableness of an officer's use of force is often left to a jury, summary judgment is warranted if a court concludes, "after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances."  *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004) (quoting *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999)).

---

[3] The family does not appeal the resolution of its other claims against the officers or its claims against the township.

[4] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367.  We have jurisdiction under 28 U.S.C. § 1291.  In this appeal from a grant of summary judgment, "[w]e apply the same test as the district court: viewing the evidence in the light most favorable to the nonmoving party, we ask whether there is any genuine issue of material fact."  *Turco v. City of Englewood*, 935 F.3d 155, 161 (3d Cir. 2019).

When Lowery and DeSantis arrived on the scene, they knew Paone had a history of mental illness and had just attacked Juliana and stabbed Lisa. Lowery knew that Paone had toy guns, but Lowery also heard someone at the scene report that Paone had "a gun"—not a toy. And both officers saw Paone carrying what looked like a real gun. They also saw Lisa nearby, covered in blood and reporting that she was dying.

Given all this, when Paone brandished an object that looked like a real gun, it was reasonable for the officers to make a split-second decision to deploy deadly force. *See Cruz v. City of Deming*, 138 F.4th 1257, 1263–64 (10th Cir. 2025) (concluding that officers reasonably used deadly force against an individual carrying what appeared to be, but was not, a rifle); *cf. Lamont v. New Jersey*, 637 F.3d 177, 183 (3d Cir. 2011) (observing that "waiting . . . could well prove fatal" when police reasonably but mistakenly believed a suspect was drawing a pistol). Paone's mental illness does not affect the immediacy of the threat he posed to the officers in these circumstances. *See Estate of Strickland v. Nevada County*, 69 F.4th 614, 617–22 (9th Cir. 2023).

\*     \*     \*

For the foregoing reasons, we will affirm the District Court's order.

6